UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL J. BECKWITH, ) | |
| ) | |
| Plaintiff, ) | Case No. C04-1488-MJP-JPD |
| ) | |
| v. ) | |
| ) | |
| JO ANNE B. BARNHART, ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Michael Beckwith proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (the "Commissioner"). The Commissioner denied Plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act after a hearing before an Administrative Law Judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

**I. FACTS AND PROCEDURAL HISTORY**

Plaintiff is a 45-year-old man with a high school education and four years of service in the United States Air Force. AR 63, 104, 75. Following his discharge from the Air Force, the plaintiff successfully completed vocational training at Tacoma Community College. AR 111. Plaintiff has held a variety of jobs, including apartment manager, phone-room manager, cashier,

REPORT AND RECOMMENDATION
PAGE -1

baker, and security guard. AR 111, 118, 75.

In 1981, plaintiff molested his young niece and was sentenced to a period of approximately four years of imprisonment. AR 401. After opting out of treatment at Western State Hospital, plaintiff was incarcerated for the remainder of his sentence. AR 401. In 1999, he pleaded guilty to possession of child pornography and served approximately twenty months in prison. AR 401-02.

Alleging "affective" and "personality" disorders, plaintiff filed for SSI in November 2000. AR 385-88. In December 2000, he applied for DIB, alleging disability beginning on March 31, 1998. AR 63. The Commissioner denied plaintiff's applications initially, and on reconsideration in 2001. AR 32-39. Following a hearing, the ALJ determined that plaintiff was not disabled. AR 23-24. She found that he was capable of performing simple, repetitive tasks that did not involve the public and denied his applications for benefits. AR 23-25. The Appeals Council denied plaintiff's request for review on May 7, 2004. AR 5. The ALJ's decision therefore became the final decision of the Commissioner for purposes of this Court's review. Plaintiff timely brought this civil action challenging the Commissioner's final decision. Dkt. No. 3.

## II. JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## III. STANDARD OF REVIEW

The Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g), and 1383(c)(3); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*,

881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77.

### IV. EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. § 423 (d)(1)(A). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382(c)(a)(3)(B); *See also Tacket v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The Social Security regulations set out a five-step sequential evaluation process for

01 determining whether a claimant is disabled within the meaning of the Social Security Act.  *See*

02 20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must establish that he or she is not

03 engaging in any substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the

04 claimant establishes that he has not engaged in any substantial gainful activity, the

05 Commissioner proceeds to step two.  At step two, the claimant must establish that he has one

06 or more medically-severe impairments or combination of impairments that limit their physical

07 or mental ability to do basic work activities.  If the claimant does not have such impairments,

08 he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

09 impairment, the Commissioner moves to step three to determine whether the impairment meets

10 or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

11 416.920(d).  A claimant who meets one of the listings for the required twelve-month duration

12 requirement is disabled.  *Id.*

13      When the claimant's impairment neither meets nor equals one of the impairments listed

14 in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

15 residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

16 Commissioner evaluates the physical and mental demands of the claimant's past relevant work

17 to determine whether the claimant can still perform that work.  *Id.*  If the claimant is not able to

18 perform past relevant work, the burden shifts to the Commissioner at step five to show that the

19 claimant can perform some other work that exists in significant numbers in the national

20 economy, taking into consideration the claimant's RFC, age, education, and work experience.

21 20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1100.  If the Commissioner finds

22 the claimant is unable to perform other work, then the claimant is found disabled and benefits

23 may be awarded.

24                               **V.  DECISION BELOW**

25      In her decision of January 30, 2003, the ALJ found that although the plaintiff satisfied

26 the first two disability steps, his impairment did not equal or exceed a listing at step three.  She

further found that while he could not return to his former jobs, he retained an RFC of being able to perform simple, repetitive tasks that did not involve the public or children.  Because she concluded that there were jobs in the economy that a person with his RFC could perform, the ALJ found that the plaintiff was not disabled.  Specific findings included the following:

> 3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520 and 416.920(b).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. [T]he claimant's allegations regarding his limitations are not totally credible.
>
>    . . . .
>
> 7. The claimant has the following residual functional capacity:  the claimant can perform simple, repetitive tasks that do not involve working with the public or children.
>
> 8. The claimant is unable to perform any of his past relevant work (20 C.F.R. §§ 404.1565 and 416.965).
>
>    . . . .
>
> 12. The claimant has no exertional limitations (20 C.F.R. §§ 404.1545 and 416. 945).
>
> 13. Considering the range of work at all levels that the claimant is still functionally capable of performing, in combination with his age, education, and work experience, and using section 204.00 of the Medical-Vocational Guidelines as a framework for decision-making, the claimant is not disabled.
>
> 14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

AR 24-25.

## VI.  ISSUES ON APPEAL

Although the plaintiff raises a number of complaints about the decision below, it appears that the primary issues on appeal are:

01    1.   Did the ALJ err by failing to properly evaluate medical evidence?

02    2.   Did the ALJ err by failing to properly evaluate evidence from the plaintiff and his mother in making her RFC determinations?

03

04    3.   Did the ALJ err by failing to call a Vocational Expert ("VE") at step five of the disability evaluation process?

## VII. DISCUSSION

A.  <u>The ALJ Failed to Properly Evaluate the Medical Evidence.</u>

Plaintiff argues that he suffered from more limitations than those determined by the ALJ and that the ALJ's treatment of the medical evidence resulted in an inaccurate assessment of his limitations. Dkt. No. 12. Defendant contends that the ALJ properly evaluated all of the medical evidence. Dkt. No. 20.

Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. *Id.* at 761-62 & n.7. The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d at 751.

Where a treating physician's opinion is not contradicted by another physician, however, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). In order to do so, the ALJ must provide a detailed and thorough summary of the facts and conflicting evidence and explain his interpretations and findings based thereon. *Id.* at 725. Mere conclusions are not enough. *Id.* An ALJ must defer to a treating physician's opinion, even if controverted by other medical opinions, unless the ALJ provides specific and legitimate reasons based on substantial evidence in the record. *See Andrews*, 53 F.3d at 1041, 1043, *Magallanes*, 881 F.3d at 751. The ALJ can meet this burden by setting out a detailed and thorough summary of the

REPORT AND RECOMMENDATION
PAGE -6

facts and conflicting clinical evidence, stating his interpretation thereof and making findings." *Id.*

### 1. Dr. Mac's Diagnosis

In this case, Dr. Mac, the plaintiff's treating psychiatrist, opined that plaintiff had depression that caused marked limitations in his ability to relate appropriately to co-workers and supervisors. AR 185. He also opined that plaintiff had a moderate inability to interact appropriately with the public. AR 185. The ALJ's decision is generally consistent with these opinions, AR 21, but her RFC analysis implicitly rejects them, because it fails to address his limitations in dealing with the public, coworkers, and supervisors. AR 23-24.

Because Dr. Mac's opinions were uncontradicted, the ALJ was obligated to provide clear and convincing reasons for rejecting them. She failed to do so. Indeed, the decision provides no specific justification for why these limitations were omitted. The ALJ did acknowledge that limiting plaintiff to unskilled work will largely remove him from working with others, but this statement does not address his limitations in dealing with supervisors and co-workers. She also found that the plaintiff's testimony regarding his limitations to be "not entirely credible," but this does not sufficiently explain her decision to reject Dr. Mac's diagnosis. On remand, the ALJ should therefore properly weigh Dr. Mac's diagnosis, or provide clear and convincing reasons supported by the record for rejecting it.

### 2. Dr. Vizzard's Diagnosis

Dr. Vizzard was also a treating psychiatrist. He opined that plaintiff suffered from severe depression, and added that he suffered from pedophilia and avoidant personality disorder as well. AR 157. He determined that plaintiff's impairments caused moderate limitations in his ability to relate appropriately to co-workers and supervisors. AR 158. He also opined that plaintiff had a marked inability to interact appropriately with the public. AR 158. These opinions are not contradicted by other medical evidence in the record and are generally consistent with Dr. Mac's opinions. *See supra*, § VII A. 1.

REPORT AND RECOMMENDATION
PAGE -7

01       Once again, the ALJ's RFC analysis implicitly rejects a treating physician's evaluation

02 by failing to address plaintiff's limitations in dealing with the public, coworkers, and

03 supervisors. AR 23-24. Rather, than integrating or rejecting the opinion, the ALJ merely

04 summarized its contents. AR 16-17. Because the ALJ did not employ the limitations identified

05 by this opinion in her analysis, nor provide clear and convincing reasons for rejecting it, she

06 committed legal error. On remand, the ALJ should therefore properly weigh Dr. Vizzard's

07 testimony or provide clear and convincing reasons for rejecting it.

08       B.     <u>Evaluation of Examining Doctors' Testimony</u>

09       The opinions of examining physicians are to be given more weight than non-examining

10 physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the

11 uncontradicted opinions of examining physicians may not be rejected without clear and

12 convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

13 physician only by providing specific and legitimate reasons that are supported by the record.

14 *Id.* at 830-31.

15       1.     Psychologist Dr. Chan

16       In October 2000, Dr. Chan evaluated plaintiff and diagnosed him with major

17 depression, pedophilia, and avoidant personality features. AR 246. Among other things, he

18 found plaintiff to have a markedly limited ability to respond appropriately to and tolerate the

19 pressures and expectations of a normal work setting.[1] AR 247. Dr. Chan's opinions are

20 uncontradicted.

21       Here again, however, the ALJ implicitly rejected the opinions without providing

22 sufficient reasons for doing so. She simply mentions Dr. Chan's diagnoses of plaintiff and

23 notes that Dr. Chan's opinion was rendered soon after plaintiff's release from prison. AR 17.

24 However, the ALJ does not address the limitations identified by Dr. Chan or otherwise include

---

[1] Dr. Chan observed that medication improved his ability to function, but nevertheless assessed the marked limitations described above.

REPORT AND RECOMMENDATION
PAGE -8

his medical evidence in her analysis. On remand, she should properly weigh Dr. Chan's testimony or provide clear and convincing reasons for not weighing it.

2. Psychiatrist Dr. Hoiness

Dr. Hoiness found plaintiff to have a GAF of 50, which indicates a "serious impairment in social, occupation or school functioning." AR 266; Amer. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Ed. 2000). Dr. Hoiness also offered an uncontradicted medical opinion that plaintiff would "have difficulty interacting with coworkers, the public and supervisors." AR 266. The ALJ's RFC analysis did not adequately incorporate this limitation. She found that plaintiff could perform simple, repetitive tasks that do not involve working with the public or children. AR 22. This does not address his ability to work with supervisors and coworkers. On remand, the ALJ should therefore properly weigh Dr. Hoiness's testimony, or provide clear and convincing reasons for rejecting it.

3. Psychologist Dr. Hammer

In September 2002, Dr. Hammer examined plaintiff and determined that he had poor or no ability to relate to coworkers, interact with supervisors, deal with work stressors, or use proper judgment. AR 371. He similarly opined that plaintiff had no or poor ability to behave in an emotionally stable manner, relate predictably in social situations, and work reliably. AR 372.

Unlike the opinions of Drs. Chan and Hoiness, however, the ALJ gave clear and convincing reasons for rejecting at least portions of Dr. Hammer's opinion. The ALJ pointed out that plaintiff's activities of daily living were inconsistent with the extreme limitations Dr. Hammer described. AR 21. She noted that he could take care of all of his personal needs, engage in volunteer work, and perform in certain social situations. AR 21. She also noted that evidence suggested plaintiff did puzzles and certain other activities that required concentration. AR 21. These are sufficiently clear and convincing to reject the portions of Dr. Hammer's testimony relating to plaintiff's ability to function in some social situations, but they fall short

REPORT AND RECOMMENDATION
PAGE -9

of addressing plaintiff's limitations with respect to his ability to relate to others and perform in a work environment. This should be corrected on remand.

### C. Evaluation of Non-Examining Doctors' Testimony

Plaintiff also argues that the ALJ erred by failing to properly consider a wide range of opinions offered by various non-examining state agencies. Dkt. No. 12. Defendant does not respond to this argument.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinion of such a source and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p 1996 WL 374180, at *2 (S.S.A.).

Here, at least three different psychologists evaluated plaintiff and found him to have a moderate limitation on his ability to concentrate for extended periods of time and to interact appropriately with co-workers and the public. AR 197-98; 223-24; 281-83; 323-25. The ALJ, however, provided no discussion of these opinions and, at least with respect to his ability to work with co-workers and supervisors, does not appear to have incorporated them into her analysis. This error should be corrected upon remand.

### D. Analysis of Plaintiff's Credibility

Plaintiff argues that the ALJ failed to provide "clear and convincing" reasons for not finding him credible. Dkt. No. 12. He argues that the ALJ exaggerated his ability to perform minimal activities and improperly weighed reports that his condition had improved. Dkt. No. 12.

According to the Commissioner's regulations, a determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529 and 416.909; SSR 96-7p, 1996 WL 374186, *2 (S.S.A.). First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to

cause the claimant's symptoms. SSR 96-7p, at *2. Next, the ALJ must evaluate the intensity and persistence of the claimant's symptoms, using seven factors laid out in SSR 96-7p.[2] *Id.* at *2. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Reddick*, 157 F.3d at 722 (internal citations omitted) (en banc). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Id.* In presenting these reasons, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Id.*

Here, there are no allegations that plaintiff was malingering, so the ALJ was required to provide clear and convincing reasons for rejecting his testimony. The ALJ, however, failed to meet this burden. The ALJ determined plaintiff to "be not entirely credible" because she believed that his church attendance was inconsistent with his inability to function around people, but these two are not necessarily mutually exclusive. AR 22. The fact that plaintiff can attend an occasional church service does not mean he is capable of consistently performing in a stressful and structured work environment. 20 C.F.R. § 404, Subpt. P., App. 2, § 200.00(c) (defining RFC as "the maximum degree to which the individual retains the capacity for *sustained* . . . [work].") (emphasis added). Moreover, the ALJ pointed out that he said he had not done puzzles in several years, but was reported to have done one in the year 2000. The

---

[2]SSR 96-7p lists at least seven factors that an adjudicator must consider when assessing the credibility of an individual's statements. They include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms [. . .]; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186, at *3 (S.S.A.).

Ninth Circuit has specifically stated that "[o]ccasional symptom-free periods are not inconsistent with disability." *Lester*, 81 F.3d at 833. AR 22. These reasons offered by the ALJ are insufficient for rejecting plaintiff's testimony. On remand, the ALJ should be required to properly evaluate plaintiff's testimony, or to provide clear and convincing reasons for rejecting it.

### E. Analysis of Lay Witness Testimony

Plaintiff also asserts that the ALJ erroneously discredited his mother's lay witness testimony by failing to give "reasons that are germane" to that witness. Dkt. No. 12. Defendant responds that plaintiff's mother's testimony had a low probative value and that the ALJ was not required to address it.

In order to determine whether a claimant has an impairment, an ALJ may also consider lay witness sources, such as testimony from family members. 20 C.F.R. § 404.1513(d)(4). Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, 20 C.F.R. § 404.1513(e), *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987), and therefore *cannot* be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). If an ALJ wishes to discount the testimony of a lay witness, he must provide reasons germane to each witness. *Id.* Identifying inconsistencies between such statements and the record when looked at as a whole is sufficient. *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001).

Here, it is not clear that the ALJ actually rejected plaintiff's mother's testimony. Plaintiff's mother reported that plaintiff is depressed, has few friends, and that he works very slowly. The ALJ briefly summarized the mother's statements, but made no indication about whether she adopted or rejected them. AR 20-21, 435-39. While the ALJ's findings that plaintiff had moderate limits in social functioning and difficulty dealing with the public are consistent with this testimony, the ALJ does not explicitly address the testimony. On remand, the ALJ should directly address the weight she gives to this testimony.

F. <u>The ALJ Should Have Called A Vocational Expert at Step Five</u>

Plaintiff argues that the ALJ erred by failing to call a vocational expert ("VE") at step five of the sequential evaluation process. Dkt. No. 12. Specifically, he argues that VE testimony was needed (1) because the ALJ found him to suffer from a severe mental impairment at step two; (2) to determine the vocational impact of plaintiff's "moderate" difficulties maintaining concentration, persistence, or pace; (3) to determine whether there was a significant number of jobs that he was qualified to perform; and (4) to evaluate the extent of his mental limitations. Dkt. No. 12. Defendant responds that the ALJ was not required to call a VE because she properly found him capable of performing unskilled work. Dkt. No. 20.

After a claimant has demonstrated that he has a severe impairment that prevents him from doing their past relevant work, he has made a *prima fascie* showing of disability. *Tacket*, 180 F.3d at 1100. The burden then shifts to the Commissioner at step five to demonstrate that, in light of the claimant's RFC, age, education, and work experience, he can perform other types of work that exist in "significant numbers" in the national economy. *Id.*; 20 C.F.R. §§ 404.1520(f) and 416.920(f).

The Medical-Vocational Guidelines ("Guidelines") are essentially a matrix that categorizes work by exertional level (sedentary, light, or medium) and contain various factors relevant to a claimant's ability to find work, including age, education, and work experience. For each combination of factors, the Guidelines direct a finding of either "disabled" or "not disabled." An ALJ may rely upon the Guidelines to direct a finding when they "*completely and accurately* represent the claimant's limitations." *Tacket*, 180 F.3d at 1101 (emphasis in original).

When a plaintiff suffers from significant non-exertional impairments not contemplated by the Guidelines, however, the ALJ may not use them to direct a finding of disability and instead must use the principles in the appropriate sections of the regulations to determine whether plaintiff is disabled. SSR 85-15, 1985 WL 56857, at *1 (S.S.A.); *Tacket*, 180 F.3d at

1101-02.  When an ALJ uses the Guidelines in this fashion to evaluate non-exertional limitations not contemplated by the Guidelines, she must call upon a VE.  *Tacket*, 180 F.3d at 1102.  In such a scenario, the ALJ must provide the VE with an accurate and detailed description of the claimant's impairments, as reflected by the medical evidence of record.[3]  *Tacket*, 180 F.3d at 1101.

Here, the ALJ erred by failing to call a VE at step five after finding plaintiff suffered from severe non-exertional impairments at step two.  At step two, the ALJ found plaintiff to suffer from severe non-exertional impairments, including pedophilia and depression.  AR 21, 24.  She also found that he had "difficulty" being in situations with the public and determined that he had at least "moderate" difficulty maintaining concentration, persistence, or pace, as well as difficulty concentrating.  AR 21.  She found him to suffer from no exertional physical limitations.  AR 21.  Since his severe impairments were purely non-exertional, the ALJ should have called a VE to determine what work he was capable of performing.  The ALJ did not call a VE at step five.  Rather, she appears to have discounted the effects of plaintiff's severe impairments and instead used the Guidelines to make her own determination that he was not disabled.

The ALJ's failure to call a VE constituted legal error.  *See Tacket*, 180 F.3d at 1102.  This requires reversal.  On remand, ALJ should require the VE to provide testimony concerning the full vocational impact of all plaintiff's impairments, including his difficulties maintaining concentration, persistence or pace.  The VE should also testify as to the availability of jobs in the economy for which plaintiff is qualified.

## VIII.  CONCLUSION

---

[3]Using the VE, the ALJ must determine whether plaintiff is capable of his past relevant work and if not whether his relevant work skills are transferable to other jobs.  If they are not transferable, the ALJ must then determine whether the plaintiff is capable of performing any unskilled work.  SSR 85-15.

REPORT AND RECOMMENDATION
PAGE -14

For the reasons set forth above, the decision of the ALJ should be reversed and this case remanded for further administrative hearings. On remand, the ALJ should be instructed to conduct her proceedings in a manner not inconsistent with this Report and Recommendation.

DATED this 1st day of July, 2005.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -15